(115 So. 258)

## HILL v. HILL. (1 Div. 458.)

Supreme Court of Alabama. Jan. 26, 1928.

1. **Deeds** ⟨key⟩17(3)—**Return of husband to wife and resumption of marital relations with mutual promises held not valuable consideration for deed.**

Return of husband to wife after separation of a few weeks and after wife had brought divorce suit and resumption of marital relations, with mutual promises looking to a solution of their domestic troubles, *held* not valuable consideration for deed of wife to husband.

2. **Deeds** ⟨key⟩196(3)—**Relation of husband and wife is confidential, and contracts between them are subject to rules applicable to contracts between persons in confidential relation (Code 1923, § 8272).**

Relation of husband and wife is a confidential relation, and all contracts between them are subject to rules applicable to contracts between persons standing in confidential relation, by express terms of Code 1923, § 8272.

3. **Husband and wife** ⟨key⟩49¾(5)—**Gifts to husband will be scrutinized with close suspicion, and slightest suspicious circumstance will require husband to produce satisfactory proof negativing undue influence (Code 1923, § 8272).**

Gifts from wife to husband will be scrutinized with close and vigilant suspicion, and appearance of slightest circumstance of suspicion will require husband to produce satisfactory

proof that gift resulted from pure, voluntary, and well-understood act of wife, under Code 1923, § 8272.

**4. Deeds ⬅196(3)—Purchase from wife will be scrutinized with close suspicion, and slightest suspicious circumstance will require husband to produce satisfactory proof negativing undue influence (Code 1923, § 8272).**

Purchase of property by husband from wife will be scrutinized with close and vigilant suspicion, and appearance of slightest circumstance of suspicion will require husband to produce satisfactory proof that gift resulted from pure, voluntary, and well-understood act of wife, under Code 1923, § 8272.

**5. Deeds ⬅211(4)—Evidence held to show that deed to husband was procured by undue influence, warranting cancellation.**

Evidence *held* to show that deed conveying real property to husband was procured by undue influence of husband, warranting cancellation, since there were circumstances of suspicion casting burden of proof on husband, and husband failed to discharge such burden.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Bill in equity by John Henry Hill against Rose Nolen Hill for sale of property for division of proceeds, and cross-bill by respondent for cancellation of a deed. From a decree denying relief under the cross-bill, respondent appeals. Reversed in part and remanded.

Jesse F. Hogan, of Mobile, for appellant.

There was no consideration for the deed from respondent to complainant. The promise by the latter to live with the former is not a legal consideration for a deed. Clisby v. Clisby, 160 Ala. 572, 49 So. 445, 135 Am. St. Rep. 110; Ortman v. Ortman, 203 Ala. 167, 82 So. 417; 1 Williston on Contracts, § 133; 13 C. J. 352; 30 C. J. 512; 19 C. J. 65. In the absence of facts affirmatively showing a gift made by the wife to the husband without fraud or undue influence, some valuable consideration is necessary to support the deed. 30 C. J. 695. Husband and wife may contract with each other, but such contracts are subject to the rules of law as to contracts between persons standing in confidential relations. Code 1923, § 8272. The burden of proof rests upon the husband to show by clear and convincing evidence that a deed from his wife to him was freely, fairly, and voluntarily made. Ryan v. Price, 106 Ala. 585, 17 So. 734; Couch v. Couch, 148 Ala. 335, 42 So. 624; 30 C. J. 710; Cox v. Parker, 212 Ala. 35, 101 So. 657; Manfredo v. Manfredo, 191 Ala. 322, 68 So. 157; Nelson v. Brown, 164 Ala. 397, 51 So. 360, 137 Am. St. Rep. 61; Young v. Love, 186 Ala. 292, 65 So. 337; McLeod v. McLeod, 145 Ala. 269, 40 So. 414, 117 Am. St. Rep. 41; Hutcheson v. Bibb, 142 Ala. 586, 38 So. 754; McQueen v. Wilson, 131 Ala. 606, 31 So. 94; Bancroft v. Otis, 91 Ala. 279, 8 So. 286, 24 Am. St. Rep. 904; Waddell v. Lanier, 62 Ala. 347; Malone v. Kelley, 54 Ala. 532.

Rittenhouse M. Smith, of Mobile, for appellee.

When one spouse sues for a divorce in good faith, the law allows the other to stay away from the house. 9 R. C. L. 360. Mutual promises are of themselves sufficient as consideration in bilateral contracts. 6 R. C. L. 676. One cannot complain of having been forced by fraud or otherwise to do that which he was already legally bound to have done. 26 C. J. 1172; 21 C. J. 201.

GARDNER, J. The parties to this suit are husband and wife. They were married in May, 1917, at Michigan City, Ind., and moved to Mobile, Ala., a year later. The wife at the time of the marriage was a widow, 49 years of age, and the husband 10 years her junior. She had property of the value of nearly $5,000. It clearly appears he was without any means. The wife sold her property in Indiana upon their removal to Alabama, and purchased other real estate in Mobile, the first purchase being made in May, 1918; the conveyance being made to her and the husband jointly. The following year, however, the interest of the husband was conveyed to the wife. On July 24, 1923, the wife conveyed to the husband an one-half interest in her real estate in Mobile described in the bill in this cause. In April, 1925, the parties separated, and on May 21, 1925, the bill in this cause was filed by the husband, which, as amended, seeks a sale of the property for division between them. Defendant by answer and cross-bill insists there is no joint ownership as the deed of July 24, 1923, was obtained as a result of undue influence, and seeks relief by way of cancellation thereof. The chancellor concluded the deed was valid and denied the relief sought by the cross-bill. From this decree, defendant has prosecuted this appeal.

[1] For a time previous to the execution of this deed the parties had been separated, but a few days prior thereto there was a reconciliation and the relationship of husband and wife resumed. That there was no monetary or other consideration of like character for the execution of this deed is without dispute. We are not impressed with the insistence of appellee that the return of the husband to the wife, after a separation of a few weeks and their mutual promises looking toward a peaceful solution of their domestic affairs, constituted a valuable consideration, though at the time of the reconciliation the wife had pending a suit for divorce. 13 Corpus Juris, 351; 30 Corpus Juris, 512; 19 Corpus Juris, 65; 9 R. C. L. 360; Clisby v. Clisby, 160 Ala. 572, 49 So. 445, 135 Am. St. Rep. 110.

Whatever may have been the rights of the

husband as to remaining from home pending the divorce suit (9 R. C. L. 360), the reconciliation was an abandonment of such proceeding by the wife and a condonement of the matters therein set up, and his return to the home under these circumstances was clearly not a matter of barter and sale. The matter of consideration is an evidential fact to be weighed with all the other testimony. But we are not here concerned with any strict or technical definition of valuable consideration, as this is not a matter of vital importance in a case of this particular character.

[2-4] While the husband expended some labor upon improvements upon the property, we are persuaded the expenditure of money was largely, if not solely, from funds of the wife. In any event, however, it does not appear to be insisted that the deed was executed in consideration of any outlay of either labor or money on the part of the husband, and no effort to show that an one-half interest therein would be fair and equitable, nor does the deed recite any such consideration, but merely "one dollar and other good and valuable considerations." The argument for valuable consideration rests largely upon a return of the husband to the wife and a resumption of the marital relations, with mutual promises looking to a solution of their marriage troubles. For the purposes here in hand, therefore, we think the deed here assailed may be considered in the class of deeds of gift from wife to husband. But, in any event, the rule of law governing the transaction is the same as expressed by this court in Crowder v. Crowder, ante, p. 230, 115 So. 256, present term, as follows:

"In harmony with current authority (30 Corpus Juris, p. 673; 2 Pom. Eq. Jur. § 963), and in furtherance of the express statutory declaration embodied in section 8272, Code of 1923, this court holds that the relation of husband and wife is a confidential one, and that all contracts into which they enter are subject to the rules of law as to contracts by and between persons standing in confidential relations. In Manfredo v. Manfredo, 191 Ala. 322, 68 So. 157, speaking to the principle of law here applicable, the court said: 'It is for the common security of womankind that gifts procured by husbands, and purchases made by them, from their wives, should be scrutinized with a close and vigilant suspicion, and that the court, upon the appearance of the slightest circumstance of suspicion, should require of the husband satisfactory proof that the transaction resulted from the "pure, voluntary, and well-understood" act of the mind of the donor.'"

[5] Applying these principles to the facts as here presented, we are persuaded the transaction must fall. No detailed discussion of the evidence will be indulged, but a mere outline of our view thereon will suffice.

It is quite apparent the estate of the wife, though not large, has been the "bone of contention" between this couple since their marriage. That the husband has persisted in acquiring from his wife an one-half interest in her property, we think, is clearly established. A highly reputable attorney of Mobile, who testifies in this cause, and who drew the conveyance here in question, represented on several occasions these parties, and his testimony discloses much discussion by them in reference to the property matter, saying, "I reckon they had 50 discussions in my office about the whole business." At the time of the execution of the deed the husband called up the attorney for its preparation, and it was so prepared at the time the husband and wife appeared together in his office for its execution. The wife insists she was ill, and that she was importuned and threatened by the husband. That she was not very well at the time, and that the husband evidently importuned her much, we think, is reasonably well established. He was clearly much concerned in securing this one-half interest and was doubtless very persistent, as she states. The conduct of the parties, as disclosed by the testimony of the attorney, indicates the wife was being urged to do that which she would not have done voluntarily and of her own free will, undisturbed by entreaties of the husband and the perplexing situation in which she found herself. She owned the property, purchased, as we conclude from the proof, largely if not solely with her own means, and all the papers she herself kept and held at the time the deed was made. Upon reaching the attorney's office, they discussed the matter some and the wife signed the deed. The attorney, also a notary, proceeding with the acknowledgment, asked if she signed freely and voluntarily. The attorney testifies that she answered in the negative, his testimony at this point being as follows:

"I think she said no; she did not do it with a very good grace or good will; * * * and then I told her I could not take her acknowledgment; and I think that is what the little fuss came up about. He was impatient, and told her they had agreed to make up, and she had signed before the neighbors, and he thought it was a very silly situation to get in."

There was further discussion as to rent agreement which was also signed by the parties, and the attorney again asked her as to her signature being free and voluntary, and states that she replied, "She did, as she guessed, that was the only way they could get along." The attorney heard no threats made by the husband, and does not think from what he saw of them that the husband would have offered any physical violence at all, though he states, "He was capable of maintaining his position in an argument so far as his rights were concerned," and that his conduct on this occasion was that of "great impatience with her, and something of irritation on his part." The attorney was so impressed with the situation, however, that upon completion of the execution of the deed, he did not care to take

the responsibility of delivering it to the husband, saying as to this:

"Then I filled in the certificate, and I remember this very distinctly, because I had represented both of them, and this property had been the bone of contention, and I did not want to take the responsibility on myself of handing the deed over to Mr. Hill, and I was sitting at my desk, and she was at my right, and the ledge of my desk was pulled out, and Mr. Hill was sitting further over back of me, and I took this deed and put it down on that ledge to see what they were going to do, and it stayed there quite a while, and they talked the matter over, and finally they got up and Mrs. Hill took the deed and she never did give it to Mr. Hill in my office. * * * She went away with the deed, and they went away together. * * * I told you I delivered it to Mrs. Hill, but I explained to you the way in which I delivered it. I put it there, expecting her to take it."

This particular feature of the evidence is of interest also in connection with the testimony of the wife to the effect that she carried the deed home and "hid it between the leaves of a newspaper in my dresser drawer," to use her language. The wife further testifies that her husband did not ask her for the deed until about one month thereafter, when he pleaded and threatened while she was sick to such an extent that she finally told him where the deed was placed in order that she might have peace. He had the deed recorded, and she afterwards secured possession of the deed and has it now and has continued to pay the taxes on the property. She has subsequently made efforts to have him reconvey the property, but without success. The husband was re-examined, and we do not find any specific denial of the testimony of the wife. as to the manner of securing possession of the deed when he got it for record—merely stating in a general way that she gave it to him and there were no threats.

Clearly, therefore, considering the relationship of the parties and the question of duress or undue influence, there is upon the whole "an appearance. of the slightest circumstance of suspicion," to say the least of it, as to this transaction, and the burden was cast upon the husband to show by satisfactory proof that the transaction was fair and just and resulted from the pure, voluntary, and well-understood act of the grantor. Crowder v. Crowder, supra. There was no independent advice given the wife, nor other satisfactory proof tending to show the transaction was not affected by an abuse of confidence. We have not overlooked the evidence offered by the husband that the wife subsequently expressed satisfaction over the settlement, yet the attorney who drew the deed states that within a year thereafter the wife, in conversation with him, "deplored the fact that she had executed this deed." The entire evidence in the cause has been read and examined with much

care and considered in the light of the well-prepared briefs for the respective parties. Further discussion we consider would be unprofitable and extend this opinion to undue length. Suffice it to state our conclusion that the husband has failed to sustain the burden of proof cast upon him by the rules of law well established in this jurisdiction, and that the wife is entitled to a cancellation of the deed. Of course, the relief of cancellation of the deed renders the rent agreement nugatory, and the argument of counsel with reference to that instrument is without merit.

In so far as the decree held the deed of July 24, 1923, valid and binding and denied cross-complainant relief by way of cancellation thereof, it is laid in error and will accordingly to that extent be here reversed. The cause will be remanded to the court below to be proceeded with in accordance with the views herein expressed.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.